UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| RANDY and TRISHA HOWARD,<br>Individually and on behalf of a class<br>of similarly situated persons, | ) ) ) | |
| | ) | Case No. 1:09-cv-00820-WS-M |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BAYROCK MORTGAGE<br>CORPORATION, *et al.*, | ) ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS, THE FIRST AMERICAN CORPORATION AND UNITED GENERAL TITLE INSURANCE COMPANY

## INTRODUCTION

Although the Complaint is littered with RESPA allegations (a claim which if asserted would fail as a matter of law), Plaintiffs assert just one cause of action against United General Title Insurance Company ("UGT") and The First American Corporation ("FAC") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs' RICO claim is plainly deficient and should be dismissed.

Plaintiffs allege they were overcharged for a title insurance policy issued by Lenders' First Choice ("LFC"), an agent of Bayrock Mortgage Corporation ("Bayrock"). Plaintiffs acknowledge that the "calculation, imposition and collection" of the charge was conducted by LFC (not a party to this lawsuit) (Compl. ¶ 26.) Nonetheless, they attempt to assert a RICO

claim against UGT, the underwriter of the policy, and FAC—a holding company which had no involvement in the transaction—based on the allegation that the purported title insurance overcharge somehow violated RESPA.  A RESPA violation, however, is not a "racketeering activity" under RICO.  Regardless, the Eleventh Circuit and this district court have uniformly rejected RESPA claims premised on title insurance premium overcharges.

Plaintiffs attempt to recast their frivolous RESPA allegations as mail or wire fraud in order to support their RICO claim against UGT and FAC.   Their efforts fail.  As an initial matter, the Complaint does not set forth <u>any</u> well-pleaded facts against FAC, much less allege how the holding company was involved in any purported mail or wire fraud.  Instead, Plaintiffs appear to assert that FAC should be liable for the acts of its subsidiary, UGT.   This argument was flatly rejected by the United State Supreme Court in *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998).

Plaintiffs' RICO allegations also contain numerous other deficiencies that require dismissal under Fed. R. Civ. P. 12(b)(6).  As set forth fully below, Plaintiffs fail to:  (1) plead with the requisite particularity required by Rule 9(b); (2) identify a cognizable predicate act of fraud; or (3) describe a RICO enterprise that has a structure and is distinct.

Additionally, Plaintiffs failed to exhaust the mandatory administrative remedy required under Alabama law prior to filing this suit.

## PLAINTIFFS' AVERMENTS

UGT and FAC recount Plaintiffs' allegations only for the purpose of evaluating the Complaint.  On or about January 19, 2007, Plaintiffs obtained a loan from Bayrock on their home located at 3057 Kendale Drive, Mobile, Alabama 36606.  (Compl. ¶¶ 11-12.)[1]  Bayrock is a sub-prime mortgage lender.  (*Id*. at ¶ 13.)  To complete this transaction, Bayrock required that Plaintiffs use LFC as the settlement agent.  (*Id*. at ¶ 15.)  At all relevant times, LFC was acting at the direction of and was the agent of Bayrock.  (*Id*. at ¶ 14.)

As part of their loan transaction, Plaintiffs obtained title insurance. (*Id*. at ¶ 28.)  LFC calculated, imposed, and collected the premium for the title insurance policy that was underwritten by UGT.  (*Id*. at ¶¶ 25, 26.)  Plaintiffs claim LFC charged them $275 for the title insurance policy—allegedly $138 more than the premium permitted by UGT's filed rates. (*Id*. at ¶¶ 28, 29, 32.)  Plaintiffs assert that the title insurance charge violated RESPA and state laws regulating title insurance premiums.  (*Id*. at ¶¶ 88, 105.)

According to Plaintiffs, their loan transaction was part of a larger "scheme" between UGT, FAC, LFC, and its parent company, Mercury, to charge borrowers more for title insurance than the rates filed and approved by the Alabama Department of Insurance.  (*Id.* at ¶¶ 22, 29, 87,

---

[1] A search of publicly available records revealed that Plaintiffs filed for Chapter 7 bankruptcy in 2003 and received a discharge on July 14, 2003 in the U.S. Bankruptcy Court for the Southern District of Alabama, Case No. 03-11418.  Neither Bayrock nor Bank of America has yet been served with process in this lawsuit.  Accordingly, at this time we do not have the relevant loan documents to determine if Plaintiffs adequately disclosed the bankruptcy filing in connection with obtaining the mortgage.

91, 96.)  Based on these averments, Plaintiffs seek to represent an undefined class. (*Id.* at ¶¶ 114-125.)[2]

## ARGUMENT

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by *factual allegations*" to withstand a 12(b)(6) motion.  *Id.* at 1950 (emphasis added).

When, as here, a complaint sounds in fraud, a plaintiff must plead those allegations with particularity under the heightened pleading requirement of Rule 9(b).  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1380 (11th Cir. 1997).

I.     **PLAINTIFFS' COMPLAINT FAILS TO STATE A RICO CLAIM (COUNT III).**

A.     **Elements of a Civil RICO Claim**

To state a RICO claim, Plaintiffs must plead that Defendants engaged in (1) conduct (2)

---

[2] Plaintiffs also assert TILA and HOEPA violations against Bayrock and Bank of America and seek rescission of the subject mortgage transaction.  (*Id.* at ¶¶ 65-81.)  Those claims are not at issue in this motion to dismiss.

of an enterprise (3) through a pattern (4) of racketeering activity.  18 U.S.C. § 1962(c).  *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  The RICO statute expressly defines and limits "racketeering activity" to include only certain "*specified* state-law crimes, any 'act' indictable under various *specified* federal statutes, and *certain* federal 'offenses,'" including mail and wire fraud.  *H.J. Inc. v. NW. Bell Tel. Co.*, 492 U.S. 229, 232 (1989) (emphasis added); *see also* 18 U.S.C. § 1961(1) (defining which acts are "racketeering activity").

## B.    Plaintiffs' RICO Claims Lack the Particularity Required by Rule 9(b).

In order to state a RICO claim premised on mail or wire fraud, Rule 9(b) requires that Plaintiffs specifically allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007); *see also Brooks*, 116 F.3d at 1380-81.  Plaintiffs' Complaint fails to make any of these allegations with particularity against UGT or FAC.   Accordingly, the Complaint should be dismissed under Rule 9(b).

### 1.    No well-pleaded averments against FAC.

"[I]n a case involving multiple defendants ... the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks*, 116 F.3d at 1381 (finding complaint did not meet the Rule 9(b) particularity standard because it lacked specific allegations with respect to each defendant and lumped together all of the defendants in their allegations of

fraud) (internal quotations omitted); *see also Ambrosia Coal & Const. Co.*, 482 F.3d at 1317 (same).  The Complaint in this case, however, is devoid of any substantive factual allegations against FAC that can support a RICO claim.

The fact that FAC is the parent company of UGT and the "majority" shareholder of LFC's parent company, Mercury (*Id.* at ¶¶ 10, 85-87)—the only well-pleaded factual allegations related to FAC in the entire Complaint—cannot be the basis of liability.[3]  "[I]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."  *Bestfoods*, 524 U.S. at 61 (internal quotations omitted); *See also In re Ins. Brokerage Antitrust Litig.,* 2007 WL 2892700, at *10 (D.N.J. Sept. 28, 2007) (pleading "that certain entities had business dealings with each other does not suffice" to state RICO claim).  Accordingly, Plaintiffs' innocuous statements related to FAC's lawful business relationships fail to state a RICO claim against FAC under Rule 8's liberal pleading standard (*see Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 557, 570), and they certainly do not state a claim with the particularity required by Rule 9(b).  *Brooks*, 116 F.3d at 1380-81.

Plaintiffs' conclusory statements that  FAC "entered into a scheme" with UGT to commit RESPA and other state law violations and "conspired" to maximize UGT's profits also fail to support a RICO claim against FAC.  (Compl. ¶¶ 88, 91, 96.)  Plaintiffs do not specifically allege what FAC's role was in the "scheme" or how it "conspired" with UGT.  They do not allege who

---

[3] Contrary to Plaintiffs' allegation, neither FAC nor UGT is a shareholder of Mercury.

from FAC was involved in the scheme to inflate UGT's profits, when the scheme was hatched, or what the scheme entailed.  Nor do Plaintiffs assert how or why FAC as a holding company would even be subject to the provisions of RESPA or Alabama state laws governing title insurers and agents.[4]  Critically, Plaintiffs do not (and cannot) assert that FAC had any substantive role in the purported enterprise—the alleged purpose of which is to overcharge for title insurance (Compl. ¶¶ 88, 105.)  FAC as a holding company does *not* conduct any title insurance business, create any settlement statements, or collect any title insurance or other settlement fees.

There are simply no allegations in the Complaint to support this RICO claim against FAC.

**2.      Plaintiffs do not plead predicate acts committed by UGT or FAC with the requisite particularity.**

Although the Complaint is premised entirely on purported violations of RESPA (*See, e.g.*, Compl. ¶¶ 24-38, 90, 92, 98-100, 103), RESPA is not an enumerated act of "racketeering activity" under the RICO statute.  *See* 18 U.S.C. § 1961(1)(B).  In an effort to save their deficient RICO claim, Plaintiffs unsuccessfully attempt to plead  that UGT and FAC committed "mail fraud" and "wire fraud"—either may constitute "racketeering activity."   *Id.*

To establish mail or wire fraud as a predicate racketeering activity, Plaintiffs must allege with particularity that Defendants:  (1) knowingly devised or participated in a scheme to defraud

---

[4] Similarly, Plaintiffs' other cursory allegations of "unlawful conduct" committed by "Defendants"  (Compl. ¶¶97, 104) are insufficient to support a RICO claim against FAC and should be disregarded. *Brooks*, 116 F.3d at 1381.

- 7 -

plaintiffs; (2) did so willingly with an intent to defraud; and (3) used the U.S. mails or the

interstate wires for the purpose of executing the scheme.  *Langford v. Rite Aid of Alabama, Inc.*,

231 F.3d 1308, 1312 (11th Cir. 2000).  Plaintiffs' Complaint does not establish a single predicate

act of mail or wire fraud involving UGT or FAC, much less a pattern of such fraud.

As an initial matter, Plaintiffs fail to identify the time, place, and specific content of

FAC's and UGT's alleged misrepresentations.  *See Ambrosia Coal & Const. Co.*, 482 F.3d at

1316-17.  Plaintiffs aver only that  "[i]nterstate wires were used to email the closing package to

the local notary" and a "few days prior to the closing, interstate wires were used to email

preliminary documents between LFC's office, which is located in Frisco, Texas, from Bayrock's

office in Alpharetta, Georgia."  (Compl. ¶ 100.)  Critically, Plaintiffs do not attribute *any* of these

documents or their transmission to UGT or FAC.   Nor could they.  Plaintiffs concede that their

lender was responsible for the preparation and dissemination of the loan closing documents.  (*Id.*

at  ¶¶ 14-16, 20, 21.)

Even if the documents could be attributed to UGT or FAC (which they cannot), Plaintiffs

fail to allege that any of the documents in the "closing package" were false or fraudulent.

Critically, Plaintiffs also fail to allege how the loan documents were used in furtherance of the

purported scheme between UGT and FAC to inflate title insurance premiums or related fees.

Plaintiffs even fail to allege that UGT or FAC received any portion of the overcharges. (Compl. ¶

101) (alleging HUD-1 misrepresented payments to UGT *or other settlement service provider*s).

The only document Plaintiffs allege contained a misrepresentation—the HUD-1 settlement

statement (Compl. ¶ 101)—was admittedly *given to them at their home* and thus could not have been mailed or transmitted via wire (Compl. ¶ 100).[5]

Beyond their failure to identify a single predicate act of mail or wire fraud, Plaintiffs have failed to adequately aver multiple related and continuous acts occurring over a substantial period of time sufficient to support the "pattern" of racketeering activity required to state a RICO claim. *E.g.*, *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). Plaintiffs' claim that "interstate wires and carriers were used for the transmission of funds and documents related to class members' closings" may be accurate, but it is legally inconsequential. (Compl. ¶ 89.) Obviously, the mere fact that "thousands or tens of thousands" of Bayrock loans closed does not support a claim of mail or wire fraud. (*Id.*) Additionally, although Plaintiffs identify 11 transactions that purportedly involve "illegal conduct" (*Id.* at ¶¶ 93, 94), they fail to allege how much the borrowers were overcharged, which fees were inflated, and what, if any, false or fraudulent documents were transmitted over the mails or wires in furtherance of the "illegal conduct." These cursory assertions fall far short of stating a RICO claim against either UGT or FAC.

In sum, Plaintiffs' allegations of mail and wire fraud lack any factual foundation; they are baseless legal conclusions insufficient to support Plaintiffs' RICO claims.

---

[5] Federal law mandates that a HUD-1 be delivered and executed at the time of closing. 12 U.S.C. § 2603(b); 24 C.F.R. § 3500.10(b).

- 9 -

### 3.    Plaintiffs' claim of RICO conspiracy is not pleaded with particularity.[6]

While Plaintiffs indicate that they are pursuing a claim for RICO conspiracy under 18 U.S.C. § 1962(d), their Complaint lacks <u>any</u> factual averments to establish the elements of a conspiracy claim.  (*See* Compl. ¶ 84.)  To state a conspiracy claim under § 1962(d), Plaintiffs must allege that Defendants objectively manifested an agreement to participate directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes.  *See Jackson*, 372 F.3d at 1269.   Thus, "proof of the agreement is at the heart of a conspiracy claim." *In re Managed Care Litig.*, 430 F.Supp.2d 1336, 1345 (S.D. Fla. 2006).

Plaintiffs do not explain in their Complaint how either UGT or FAC objectively agreed to participate in a racketeering enterprise to inflate UGT's "profits." (Compl. ¶¶ 88, 91.)  The parent-subsidiary relationship between FAC and UGT alone does not objectively manifest any agreement, much less an agreement to commit mail or wire fraud.   The Eleventh Circuit has affirmed the dismissal of RICO claims when, as here, the allegations of conspiracy are "merely conclusory and unsupported by any factual allegations." *O'Malley v. O'Neill.*, 887 F.2d 1557, 1560 (11th Cir. 1989).  Indeed, the Supreme Court recently reiterated that bare conspiracy allegations that amount to nothing more than a 'formulaic recitation of the elements'" are insufficient to state a claim under Rule 8.  *Iqbal*, 129 S. Ct. at 1951.

---

[6] Plaintiffs' failure to establish a substantive RICO violation also precludes their claim for RICO conspiracy.  *Rogers v. Nacchio,* 241 Fed.Appx. 602, 609 (11th Cir. 2007) ("[W]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails.").

Plaintiffs' use of the word "conspiracy" without pleading any facts in support is plainly insufficient under both Rule 8 and Rule 9(b).

### C.     An Alleged Mark-Up of a Title Insurance Premium Is Not a Predicate Act.

Even if Plaintiffs' Complaint sufficiently pleaded a RICO claim (which it does not), their claim lacks any merit. The allegation that UGT (through LFC) purportedly violated RESPA and other state laws governing the premiums to be charged for title insurance and other settlement services does not constitute a predicate act under RICO.

Plaintiffs' Complaint against UGT and FAC is nothing more than a thinly-veiled RESPA claim.[7]  Courts in the Eleventh Circuit, however, have consistently rejected RESPA claims in the title insurance overcharge context. *Hazewood v. Fountain Fin. Group, LLC*, 551 F.3d 1223, 1225-27 (11th Cir. 2008); *Morrisette v. Novastar Home Mortg., Inc.*, 284 Fed.Appx. 729, 730 (11th Cir. 2008); *Williams v. Countrywide Home Loans, Inc.*, 284 Fed.Appx. 724, 725 (11th Cir. 2008); *Moody v. Commonwealth Land Title Ins. Co.*, 284 Fed.Appx. 735, 736 (11th Cir. 2008); *Morrisette v. Novastar Home Mortg., Inc.*, 484 F.Supp.2d 1227, 1231 (S.D. Ala. 2007), *aff'd*, 284 Fed. Appx. 729; *Edwards v. Accredited Home Lenders, Inc.*, 2007 WL 5022185, *8 (S.D.

---

[7] Plaintiffs also appear to assert they were overcharged for various other settlement services, including, *inter alia*, recording fees, wire fees, and abstracting fees (Compl. ¶¶ 21, 39, 44.)  Any claims arising from imposition of these charges do not sound against UGT or FAC. Plaintiffs allege that *Bayrock*, not UGT or FAC, required Plaintiffs use LFC as their settlement agent (*Id*. at ¶ 15) and that at all relevant times, LFC was the agent of *Bayrock* in performing these and other settlement services  (*Id*. at ¶ 14.)

23305447\V-4

Ala. Oct. 23, 2007);[8] *see also*, *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 984 (11th Cir. 2003) (dismissing complaint on grounds that mortgage lender did not violate section 8(b) by marking up the charge for settlement services when there was no allegation that lender failed to perform any services in exchange for the fee).  Because Plaintiffs admit that UGT provided services in connection with the issuance of title insurance in this case, RESPA is not a viable cause of action.[9]  (Compl., ¶¶ 25, 33.)  Slapping a RICO label on the failed RESPA claim does not make it any more viable.

     Plaintiffs' allegations do not support a RESPA claim against UGT or FAC, much less a fraud-based RICO claim.  Nothing in Plaintiffs' Complaint constitutes a "fraud" within the meaning of the specific-intent crimes of mail and wire fraud.  Objectively, there is nothing false or fraudulent about the HUD-1 settlement statement. (A true and accurate copy of the HUD-1 is attached hereto as Exhibit A.)[10]   HUD mandates that settlement providers place "the total title insurance premium" on line 1108 of the HUD-1 Settlement Statement prepared in real estate

---

[8] Plaintiffs' allegations in the instant case are virtually identical to those set forth by the same counsel in support of the deficient RESPA claims in *Edwards* and *Morrisette*.  Having failed to establish a viable RESPA claim, counsel now seeks to retool these same allegations into a RICO "scheme" and "conspiracy" claim.

[9] Any RESPA claim would also be prohibited by the safe harbor provision of Section 8(c).  12 U.S.C. § 2607(c)(1)(B). The explicit language of section 8(c) precludes the claim here, regardless of whether it was an overcharge. *See e.g.*, *Gardner v. First Am. Title Ins. Co.*, 296 F. Supp.2d 1011, 1019 (D. Minn. 2003).

[10] As the HUD-1 Statement is specifically referenced in the Complaint and is a central part of the transaction which forms the basis for Plaintiffs' Complaint, it is proper for the Court to consider it on this motion to dismiss.  *Brooks*, 116 F.3d at 1369.

closings.  24 C.F.R. § 3500 App. A.  Plaintiffs' HUD-1 complies with this requirement showing

a total charge of $275.  Plaintiffs' allegation that the HUD-1 failed to properly disclose payments

made to it for title insurance (Compl. ¶¶ 27, 30) is simply not supported by the applicable law.

*See Arthur v. Ticor Title Insurance*, 569 F.3d at 162 n.3.

### D.    Plaintiffs Fail to Establish the Existence of a RICO Enterprise.

To state a claim under 18 U.S.C. § 1962(c), a plaintiff must aver the existence of (1) a

"person" and (2) an "enterprise" that is not the same "person," (i.e. that is, a "distinct"

enterprise).  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  An

"enterprise" is "any individual, partnership, corporation, association, or other legal entity, and

any union or group of individuals associated in fact although not a legal entity."  § 1961(4).

Plaintiffs must allege that an enterprise:  (1) involved persons associated for a common purpose;

(2) in an ongoing relationship; and (3) functioned as a continuing unit for a substantial period of

longevity.  *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009); *United States v. Turkette*, 452

U. S. 576, 583 (1981).

In this case, Plaintiffs aver that the enterprise consists of LFC. (Compl. ¶ 84.)   According

to the Complaint, FAC is the parent company of UGT and the "majority" shareholder of

Mercury, LFC's parent company.  *(Id.* at ¶¶ 86-87.)  Plaintiffs further allege that LFC was the

agent of UGT with respect to issuance of the title insurance policy.  *(Id*. at ¶ 26.)  These

allegations of an interrelated corporate structure doom Plaintiffs' RICO claim.  The law is clear

that affiliated entities within a corporate family cannot form a RICO enterprise.  Plaintiffs'

enterprise theory completely ignores that the defendant "person" must be a separate and distinct entity from the "enterprise." *United States v. Goldin Industries, Inc.*, 219 F.3d 1268 (11th Cir. 2000); *see also*, *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th Cir. 2003); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 449 (1st Cir. 2000); *Fogie v. Thorn Ams. Inc.*, 190 F.3d 889, 896-97 (8th Cir. 1999). Even "legally separate entities" that operate under a shared corporate structure are not "distinct" from the enterprise. *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds at* 525 U.S. 128 (1998); *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1998) (Chrysler, its dealers, subsidiaries, and trusts do not satisfy distinctiveness requirement). As pleaded, UGT and FAC are not sufficiently separate and distinct from the enterprise, LFC, to support a RICO enterprise.

Regardless, Plaintiffs' enterprise arguments describe no more than a business relationship between FAC, UGT, and LFC. (Compl. ¶¶ 85-87, 107.) The Complaint asserts no acts of FAC, UGT, or LFC other than those taken in the ordinary course of UGT's title insurance business. (*Id*. at ¶¶ 25, 26, 28, 33) (alleging LFC calculated, imposed and collected a fee for issuing a title policy underwritten by UGT). These allegations are simply insufficient to support a RICO enterprise. *See In re Ins. Brokerage Antitrust Litig.,* 2007 WL 2892700, at *10; *Javitch v. Capwill,* 284 F.Supp.2d 848, 857 (N.D. Ohio 2003) (association based on business relationship without separate existence does not qualify as RICO enterprise).

For all of the foregoing reasons, Plaintiffs' RICO claim should be dismissed.

II.    **PLAINTIFFS' CLAIMS RELATED TO OVERCHARGES FOR TITLE INSURANCE ARE BARRED BY THE ALABAMA TITLE INSURANCE ACT, AND THE DOCTRINES OF EXHAUSTION OF ADMINISTRATIVE REMEDIES AND PRIMARY JURISDICTION.**

A.    <u>**The Alabama Title Insurance Act Does Not Provide A Private Right of Action**</u>.

Plaintiffs' claim against UGT and FAC are centered on the allegation that LFC collected a title insurance premium in excess of that allowed by the Alabama Department of Insurance. (Compl. ¶¶ 25-38.)  In Alabama, rates for title insurance premiums are regulated pursuant to the Alabama Title Insurance Act, Ala. Code §§ 27-25-1, *et seq.*  However, the Act makes clear that failure to charge for title insurance in accordance with filed rates does not give rise to a private right of action.  In fact, it expressly bars any private cause of action and vests all jurisdiction in the Commissioner of Insurance: "This chapter shall be enforceable only by the commissioner and does not create any private cause of action or other private legal recourse." Ala. Code § 27-25-9(b).

When, as here, Plaintiffs claim a private cause of action based on an alleged violation of this statutory scheme, they "must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *Morrisette*, 484 F. Supp.2d at 1231 (internal quotation omitted) (dismissing negligence claim predicated on alleged overcharge for title insurance because Alabama Title Insurance Act does not provide private right of action).  Given the lack of evidence indicating a legislative intent to allow consumers to sue for excessive title insurance charges under the Alabama Title Insurance Act and the express statutory language to the contrary, Plaintiffs should not be permitted to turn the very same claim for excessive title

insurance charges into a putative RICO class action.[11]  *See Hazewood v. Foundation Fin. Group, LLC*, 2007 WL 1975446, **4-5 (S.D. Ala. July 2, 2007).[12]

## B.   Plaintiffs Have Failed To Exhaust The Required Administrative Remedies.

The United States Supreme Court has mandated that "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993).  Similarly, the Alabama Supreme Court has long required "that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted."  *Fraternal Order of Police, Strawberry Lodge #40 v. Entrekin*, 314 So. 2d 663, 670 (Ala. 1975).

As stated above, Plaintiffs' claims against UGT and FAC are premised on the allegation that LFC collected a title insurance premium in excess of that allowed by the Alabama Department of Insurance.  (Compl., ¶¶ 25-38.)  Alabama law vests the Alabama Commissioner of Insurance with complete and exclusive authority to investigate Plaintiffs' allegations and to enforce remedies without the need to resort to judicial proceedings.  *See, e.g.*, Ala. Code §§ 27-

---

[11] A violation of the Alabama Title Insurance Act is not one of the specified state-law crimes that can constitute a predicate act under RICO.  *See* 18 U.S.C. § 1961(1).

[12] *Hazewood*, an unpublished opinion, is cited only for persuasive value.

25-9, 27-2-7, 27-2-19, 27-2-20, 27-2-28, 27-2-32.   In fact, the Commissioner has the broad

power to "invoke any legal, equitable, or special remedy."  Ala. Code § 27-2-7.

To the extent Plaintiffs object to the premium charged for the title insurance policy at

issue, Plaintiffs should have followed the administrative procedure set forth by Alabama statute

and submitted a written demand that the Commissioner hold a hearing and issue an opinion

whether they should have been charged a lesser premium.  Ala. Code §§ 27-2-19; 27-2-28; Ala.

Admin. Code 482-1-065-04.  Because Plaintiffs did not exhaust this administrative remedy prior

to filing this suit, their lawsuit should be dismissed.

### C.     The Alabama Insurance Department Has Primary Jurisdiction Over Plaintiffs' Claims.

Even if the administrative remedy provided in the Alabama Insurance Code was not an

exclusive remedy (which it is), the Alabama Insurance Department has primary jurisdiction over

Plaintiffs' claim that UGT and FAC purportedly overcharged them for title insurance.  As a

threshold matter, the determination of the appropriate charge for the title policy should be

answered by the Department of Insurance based on its extensive knowledge and experience in

the field.

The United States Supreme Court has explained that the primary jurisdiction doctrine

applies whenever enforcement of a claim originally cognizable in the courts requires the

resolution of issues which, under a regulatory scheme, have been placed within the special

competence an administrative body.  *See United States v. Western Pac. R.R.*, 352 U.S. 59, 63-64

(1956).  The Court added that the primary jurisdiction doctrine promotes "[u]niformity and consistency in the regulation of business entrusted to a particular agency  . . . by the preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure" *Id*. at 64-65 (citation omitted).

The Alabama Supreme Court has emphasized two specific reasons for applying the doctrine: (1) reliance on the specialized knowledge or expertise of the agency concerned, and (2) insuring uniformity and consistency in dealing with matters entrusted to an administrative body. *The Fraternal Order of Police, Strawberry Lodge #40*, 314 So.2d at 671-72; *see also Allen v. State Farm Fire and Casualty Co*., 59 F. Supp. 2d 1217, 1227 (S.D. Ala. 1999).

This case presents an ideal opportunity for this Court to apply the primary jurisdiction doctrine.  The business of insurance, including title insurance, is heavily regulated in Alabama. The Alabama Insurance Code, Ala. Code § 27-1-1, *et seq*., provides that, "[n]o person shall transact a business of insurance in Alabama . . . without complying with the applicable provisions of this title." Ala. Code § 27-1-5.  The Insurance Code directs the Alabama Commissioner of Insurance to "[e]nforce the provisions of [the Insurance Code.]" *Id*. at § 27-2-7(2).  Plaintiffs' claims against UGT and FAC arise from the allegation that the charge imposed for title insurance was greater than the amount allowed by the Alabama Department of Insurance. (Compl. ¶¶ 25-38.)  The Alabama Legislature has determined that evaluation of the rates charged for title insurance (and the discretion in how to best enforce those rates) is best left

to the Alabama Insurance Commissioner. Ala. Code §§ 27-25-6, 27-25-9.  Failure to apply the primary jurisdiction doctrine in this case would create the risk of ad hoc results that are inconsistent with the regulatory conclusions reached and the remedies (if any) available to the Alabama Department of Insurance.  Plaintiffs' claims therefore properly are within the purview of the Insurance Commissioner.

### III.    THE MCCARRAN-FERGUSON ACT BARS PLAINTIFFS' RICO CLAIM.

Even if Plaintiffs could state a viable RICO claim, their claim would be preempted by the McCarran-Ferguson Act.  The Act provides that "no Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance"  15 U.S.C. § 1012(b).  The Act bars the application of federal law if:  (1) the federal statute at issue does not specifically relate to the business of insurance; (2) the state statute at issue was enacted for the purpose of regulating the business of insurance; and (3) application of the federal statute would invalidate, impair or supersede the state statute.  *Moore v. Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1220 (11th Cir. 2001).  Each of these prongs is satisfied in this case.

First, there is no question that RICO does not specifically relate to insurance.  *See, e.*g, *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 392 (6th Cir. 1996).  Second, it cannot be disputed that the Alabama Title Insurance Act is a state law enacted for the purpose of regulating the business of insurance.  The remaining question is whether an application of the RICO statute would "invalidate, impair, or supersede" state law.  In this case, applying federal law would

directly interfere with the Alabama Title Insurance Act, which does not provide for a private right of action, Ala. Code § 27-25-9(b), and provides for an exclusive administrative remedy when a party is overcharged for title insurance. (Section II.B., *supra*.)

Courts within the Eleventh Circuit have barred similar RICO claims under the McCarran Ferguson Act. In *In re Managed Care Litig*, 185 F. Supp.2d 1310 (S.D. Fla. 2002), the district court dismissed RICO claims of plaintiffs in states that did not provide private causes of action for allegations of insurance fraud. "[W]here state insurance laws closely regulate the very activity forming the basis of a plaintiff's claim, the absence of a state-level cause of action counsels in favor of barring the federal lawsuit if the federal law does not specifically relate to the business of insurance." *Id.* at 1322. The Alabama Title Insurance Act does not create a private cause of action. To the contrary, it expressly bars any private cause of action and vests all jurisdiction in the Commission of Insurance. Ala. Code § 27-25-9(b). Plaintiffs should not be permitted to use a private RICO claim to pursue matters intended to be handled exclusively by governmental regulatory bodies. *Id.*

Because Plaintiffs' RICO claim meets the Eleventh Circuit's test for preemption, it is preempted by the McCarran Ferguson Act.

23305447\V-4

## **CONCLUSION**

For the foregoing reasons, Defendants The First American Corporation and United

General Title Insurance Company respectfully request that this Court dismiss Plaintiffs'

Complaint with prejudice and award all other appropriate relief.

Respectfully submitted,

SIROTE & PERMUTT, P.C.

s/ C. Lee Reeves
C. Lee Reeves (REEVC1806)
2311 Highland Avenue South
P.O. Box 55727
Birmingham, AL 35255-5727
Telephone: (205) 930-5183
Facsimile: (205) 212-3879
*lreeves@sirote.com*

T. Julian Motes (MOTET6512)
One St. Louis Centre, Suite 1000
Mobile, AL 36602
Telephone: (251) 432-1671
Facsimile: (251) 434-0196
*jmotes@sirote.com*

*Attorneys for Defendants The First American*
*Corporation and United General Title Insurance*
*Company*

23305447\V-4

**<u>CERTIFICATE OF SERVICE</u>**

   Undersigned counsel hereby certifies that a copy of the foregoing was served via the court's electronic filing system, on this 19th day of February 2010, upon the following:

Earl P. Underwood, Jr.       Kenneth J. Riemer
Law Offices of Earl P. Underwood, Jr.  P.O. Box 1206
21 South Section Street      166 Government Street (36602)
Fairhope, AL 36532       Mobile, AL 36633

<u>via U.S. Mail, postage prepaid upon:</u>

Bayrock Mortgage Corporation    Bank of America, NA
c/o National Registered Agents    c/o The Corporation Company
150 South Perry Street      2000 Interstate Park Drive, Suite 204
Montgomery, AL 36104     Montgomery, AL 36109

          <u>s/ C. Lee Reeves</u>
          Of Counsel

23305447\V-4