**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**


RANDY and TRISHA HOWARD,    )
on behalf of the class,

                     )

    Plaintiffs,

                     )

v.                            **Case No.: 09-820**

                     )

BAYROCK MORTGAGE CORP, et al.,

                     )

    Defendants.


## PLAINTIFFS' RESPONSE IN OPPOSITION TO BANK OF AMERICA'S MOTION TO DISMISS

COME NOW Plaintiffs and submit the following Memorandum of Law in response to, and in opposition of, the Motion to Dismiss filed by Defendant Bank of America, National Association, as successor by merger to LaSalle Bank National Association, as Trustee for the registered holder of Bear-Stearns Asset Back Securities I Trust, 2007-HE4 Asset-Back Certificates, Series 2007-HE4 ("BOA").  (Doc. 43).

### INTRODUCTION

The claims relevant here arise from several violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., as amended by the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. 1602 (aa) and 1639.  Plaintiffs allege that Bayrock violated TILA by failing to disclose certain settlement charges as "finance charges" as required, entitling them to recover damages pursuant to 15 U.S.C. § 1640(a)(1)-(2).  Plaintiffs also allege that their loan is governed by "HOEPA" which sets out specific requirements for "high cost" loans and that their loan violated several of these requirements, entitling them to recover the "enhanced damages" set out in 15 U.S.C.

§ 1640(a)(4).  Finally, Plaintiffs allege that defendant BOA is an assignee liable under 15 U.S.C. § 1641(d).

Plaintiffs also allege that they effectively cancelled the loan pursuant to TILA Section 1655. Defendants failed to take the required action in recognition of the rescission.  This is a new and further violation of TILA.  Claims for these TILA violations are clearly stated in the Complaint and are not time-barred.

## ARGUMENT

## I.  LEGAL STANDARD

BOA's interpretation of the U.S. Supreme Court's decision in *Ashcroft v. Iqbal, – US –, 129 S.Ct. 1937 (2009)*, is untenable.  Defendant would have this Court read *Ashcroft* to require pleadings with absolute precision and a detailed outline of each and every fact relevant to a claim.  Taken to this extreme, BOA would have *Ashcroft* abolish notice pleading.  Factual exactitude is not what is required under Rule 8 or  *Ashcroft*.   While *Ashcroft* did expound upon the principles set out in *Bell Atlantic Corp. v. Twombly, 550 US 544 (2007)*, it does not require a Plaintiff know or plead each and every fact relevant to the claims asserted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft*, 129 S.Ct. at 1949.

*Ashcroft* does not require, as suggested by BOA, exact factual allegations necessary to render liability a certainty.  Nor is a plaintiff required to allege every relevant fact.  What is required is non-conclusory factual allegations that would render liability under the applicable legal theories "plausible." *Id.*

Plaintiffs have met this standard.  Plaintiffs' claims for violation of TILA are premised on certain charges which Plaintiffs contend should have included in the "finance charge" but were not.  As explained below, each of the targeted charges are identified and described in the Complaint in detail, as are the provisions of TILA upon which the claims are based.

## II.     TILA AND HOEPA CLAIMS

The claims asserted in this case arise from the Plaintiffs' mortgage loan which originated with Defendant Bayrock on January 19, 2007.  Plaintiffs' claims asserted against defendants arise under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), as amended by the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. 1602 (aa) and 1639.  Plaintiffs allege that Bayrock violated TILA by failing to disclose certain settlement charges as "finance charges" as required, entitling them to recover damages pursuant to 15 U.S.C. § 1640(a)(1)-(2).  Plaintiffs also allege that their loan is governed by "HOEPA" which sets out specific requirements for "high cost" loans and that their loan violated several of these requirements, entitling them to recover the "enhanced damages" set out in 15 U.S.C. § 1640(a)(4).  Finally, Plaintiffs allege that defendant BOA is an assignee liable under 15 U.S.C. § 1641(d).

### A.     Plaintiffs' Have Adequately Pled a Violation of TILA

### 1.     <u>Understatement of Finance Charge</u>

Plaintiffs allege that this loan violates TILA because the Plaintiffs were charged fees which

were not properly disclosed as part of the finance charge as required by TILA.  Each of these fees, as well as an explanation of why each fee should have been included in the stated finance charge, is described in detail in the Complaint.  As alleged in Paragraph 18 of the Complaint, fees for settlement services performed by third parties may be excluded from the finance charge only if those costs are "bonafide, reasonable, necessary and clearly and conspicuously disclosed and itemized on the HUD settlement." (Complaint, ¶¶ 18 and 53).  The Complaint further describes specific charges which should have been included in the finance charge. It also states, despite BOA's statements to the contrary that Bayrock concealed finance charges by, "[k]nowingly and actively misrepresenting the Finance Charges, the Amount Financed and APR's on the TILA Disclosure Statements provided to Plaintiff and class members by, among other things, failing to include in its calculations all of the charges' described above, that were not *bona fide*, reasonable, lawful and/or not actually paid to third parties." (Complaint, ¶ 63(f)).  Those charges are as follows:

(a)    **Title Insurance**: The lender is required to state the amount charged for title insurance.  (Complaint, ¶ 22).  The amount which the lender can charge for title insurance is regulated by the Alabama Insurance Department ("DOI").  Pursuant to Alabama law, such charges cannot exceed the rates filed by the insurer and approved by DOI.  As alleged in ¶¶ 28 and 29, Plaintiffs were charged $275 for the title insurance policy, although the legal charge as determined by the insurers filed rate was only $137.  The mark up of this charge renders the charge not *"bona fide* or reasonable."  (Complaint, ¶ 31).  Plaintiffs further allege that the marking up of the title insurance fee renders the charge a finance charge and that "Bayrock was required by TILA and Reg. Z to include that charge as part of the disclosed finance charge but failed to do so." (Complaint, ¶¶38 and 57).

4

(b)   **Recording Fees:** TILA § 1605(d)(1) states that the costs incurred in recording a mortgage or other instrument may be excluded from the computation of finance charge, but only to the extent those fees are *actually paid* to the recording entity.  The Complaint alleges that the Howards were charged $120 and $190.50 for recording the mortgage when the actual amount paid to the Mobile County Probate Office was $153.45.  (Complaint, ¶ ¶ 39-40, 43, 48 & 55).

(c)   **Wire Fee:**     The $25 wire fee was unearned and does not correspond with any separate service provided and should have been included in the "finance charge." (Complaint, ¶ 44).

(d)   **Delivery Fee:**  The $30 delivery fee was unearned and does not correspond with any separate service provided and should have been included in the "finance charge." (Complaint, ¶ 45).

(e)   **Signing Fee:** The $150 signing fee was unearned and does not correspond with any separate service provided and should have been included in the "finance charge." (Complaint, ¶ 46).

(f)   **Document Preparation Fee:** The $65 documentation preparation fee was unearned and does not correspond with any separate service provided and should have been included in the "finance charge."  (Complaint, ¶ 47).

(g)   **Abstract Fee:**  Plaintiffs also alleged that the $175 fee for "abstract and title search" was not *bona fide* nor reasonable*, and, therefore, should have been included in the "finance charge." (Complaint, ¶ 56).  Plaintiff further alleges that the title search services provided by a separate company which rendered a full title report (Complaint, ¶ 42) and that the closing fee charged to the Howards by the closing company ($300), adequately compensated the closing company for each and every service it performed (Complaint, ¶ 16).  Pursuant to TILA and its implementing regulations, lenders may exclude charges for title examination and title abstracting only if those charges are *bona fide* and reasonable.  (Complaint, ¶ 53).  The actual value of the title search related services

5

performed by the third-party do not exceed $100.  (Complaint, ¶ 42).

(h)    **Failure to Itemize:** Bayrock was required to give borrowers a separate written statement of all charges included in the "amount financed."  12 C.F.R. § 226.18(c).  Bayrock failed to separately itemize these charges and fees, in violation of RESPA and TILA.  (Complaint, ¶¶ 19, 23 & 27).  Creditors are allowed to substitute the RESPA required "HUD Settlement Statement" for the "Itemization of the Amount Financed" but in order to do this the creditor and closing agent must meet RESPA's requirements.  Bayrock must separately list and itemize each of the charges, including any commissions earned for the sale of title insurance and any other services provided in connection with the closing.  "The settlement agent shall complete the HUD - 1 to itemize all charges imposed upon the Borrower and the Seller by the Lender and all sales commissions..." See 24 CFR part 3500 Appendix A.  The official Commentary to Regulation Z Section 226.18(c) states in part:

> 4. RESPA transactions. The Real Estate Settlement Procedures Act (RESPA) requires creditors to provide a good faith estimate of closing costs and a settlement statement listing the amounts paid by the consumer. Transactions subject to RESPA are exempt from the requirements of §226.18(c) if the creditor complies with RESPA's requirements for a good faith estimate and settlement statement. The itemization of the amount financed need not be given, even though the content and timing of the good faith estimate and settlement statement under RESPA differ from the requirements of §§226.18(c) and 226.19(a)(2). If a creditor chooses to substitute RESPA's settlement statement for the itemization when re-disclosure is required under §226.19(a)(2), the statement must be delivered to the consumer at or prior to consummation. The disclosures required by §§226.18(c) and 226.19(a)(2) may appear on the same page or on the same document as the good faith estimate or the settlement statement, so long as the requirements of §226.17(a) are met.

*Official Staff Commentary*, § 226.18(c)(4).[1]  (Emphasis added).  In other words, violation of the

---

[1] The Official Staff Commentary to Regulation Z published by the Board is binding and dispositive in TILA cases unless the commentary is determined to be demonstrably irrational. *Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001); *see also Ford Motor Credit Co. v. Milhollin*,

RESPA requirement to itemize sales commissions is also a violation of TILA because the HUD disclosures must comply with RESPA's requirements in order for the settlement statement to serve as a substitute for the TILA itemization.

## III.    HOEPA CLAIM

Plaintiffs allege that this is a "high cost" loan within the meaning of 15 U.S.C. § 1602(aa), and thus subject to the more stringent TILA requirements applicable to such loans.  (Complaint, ¶¶ 58-61, 75-81). These requirements were ushered in as part of the HOEPA, which was passed in 1994 in response to increased abuses in the mortgage lending marketplace. S. Rep. No. 103-169 (1994), *reprinted in* 1994 USCCAN 1881, 1912.  Once a loan is covered by HOEPA it is subject to a laundry list of prohibited terms and notice requirements. 15 U.S.C. § 1639 (c) – (j).  Congress also mandated presumptive assignee liability for any HOEPA loan to insure that the industry would police itself rather than permitting lenders to cut off a borrower's defenses to a loan by transferring it. S. Rep. No. 103-169, at 28 (1994), *reprinted in* 1994 USCCAN 1881, 1912.  An assignee of a HOEPA loan is liable for "all claims and defenses the consumer could assert against the creditor of the mortgage." 15 U.S.C. § 1641 (d)(1). Furthermore, "Congress intended to subject high cost mortgage (HOEPA loan) assignees to a more expansive standard of liability than provided pursuant to TILA." *Cooper v. First Gov't Mortgage & Investors Corp.*, 238 F.Supp.2d 50, 55 (D.D.C.2002)  (*citing Bryant v. Mortgage Capital Res. Corp.*, 197 F. Supp. 2d 1364 (N.D. Ga. 2002)).

A loan is governed by HOEPA if the total "points and fees" exceed 8% of the total loan amount. 15 U.S.C. § 1602 (aa)(B).  "Points and fees" include: 1) all Finance Charges as defined by

---

444 U.S. 555, 565 (U.S. 1980) ( "[D]eference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive").

Reg. Z § 226.4, except for actual interest payments,15 U.S.C. § 1602 (aa) (4) (A); 2) all compensation paid to mortgage brokers, 15 U.S.C. § 1602 (aa) (4) (B); and, 3) all closing costs listed in 15 U.S.C. § 1605 (e) except those which are "reasonable," and not paid to the lender or its affiliate. 15 U.S.C. § 1602 (aa) (4) (C).  12 C.F.R. § 226.32(b) (1).  Plaintiffs allege that this loan meets the points and fee trigger.  (Complaint, ¶¶ 58, 77-78).[2]

Although the regulatory definition of "points and fees" is somewhat convoluted, it clearly includes, *inter alia*, all those fees, with the exception of pre-paid interest, defined by TILA as "finance charges." 15 U.S.C. § 1602 (aa) (4) and Regulation Z, 12 C.F.R. § 226.32 (b)(1). Therefore, the points and fees, at a minimum, include: (1) the finance charge disclosed by Bayrock; plus (2) those charges identified in the Complaint as "finance charges" which should have been, but were not, included in the finance charge calculation.

Here are the charges identified in the Complaint as undisclosed finance charges:

| | |
|---|---:|
| Title Insurance (marked up portion) | $138.00 |
| Recording Fee (marked up portion) | 175.05 |
| Wire Fee Lender's Choice (line 111) | 25.00 |
| Delivery Fee (line 1112) | 30.00 |
| Signing Fee (line 1106) | 150.00 |
| Document Prep. Fee (line 1105) | 65.00 |
| Abstract Fee (marked up portion) | 75.00 |
| Total | $658.05 |

_____

[2] Plaintiffs concede that the allegations concerning the HOEPA claim could be more specifically plead.  For example, while each of the finance charges which constitute "points and fees" are described in detail in the Complaint, they are not specifically designated as a "point and fee."  Also, the "Loan Amount" is not specifically plead.  While Plaintiffs contend that such specificity is not required, it could and will be provided. Plaintiffs will file an Amended Complaint which flushes the HOEPA allegations out more fully and deletes claims and parties which have been dismissed.  However, even if the Court agreed with BOA that the HOEPA-related allegations as currently plead are deficient, dismissal is not proper because a cure by amendment is available and forthcoming.

"Points and fees" also include the following finance charges which were disclosed as such:

| | |
|---|---|
| Broker Fee: | $2,300.00 |
| Processing Fee | 300.00 |
| Wire Fee (to Bayrock) | 50.00 |
| Desk Review Fee | 125.00 |
| Tax Service Fee | 70.00 |
| Flood Certificate Fee | 25.00 |
| Administration Fee | 725.00 |
| Closing Fee | 300.00 |
| Total | $3,895.00 |

Adding these two groups of finance charges, the total Points and Fees is at least $4,553.05.

The "Total Loan Amount" is calculated by subtracting from the amount stated on the face of the Promissory Note, all Finance Charges and all fees defined by the statute and regulations as a Point and Fee. See *Official Staff Commentary* § 226.32(a)(1)(ii); *see also Hays v. Bankers Trust Co.*, 46 F. Supp.2d 490 at 498 n. 14 (S.D.W. Va. 1999); *Lopez v. Delta Funding Corp.*, 1998 WL 1537755 ((E.D.N.Y. Dec. 23, 1998).   Here, the face amount of the Howards' loan is $55,250.  The total amount of points and fees is at least $4,553.05.   Therefore, the "Total Loan Amount" is $50,696.95.  The total amount of points and fees ($4,553.05) is 8.9 % of the Total Loan Amount.[3] This is a HOEPA Loan.

## IV.   STATUTE OF LIMITATIONS DEFENSE

It is not clear whether BOA is attacking the rescission claim or the non-rescission TILA claims, or both, as being time-barred.  Regardless, none of the TILA claims are time barred because

---

[3]The maximum amount that can be charged for "points and fees"is calculated by a simple formula available to lenders originating the loan, as well as assignees in conducting their due diligence as to whether the HOEPA threshold is met. Take the face amount of the loan and divide it by 1.08.  Then subtract the result from the face amount. The face amount here, $55,250, divided by 1.08 is $51,157.41. Subtracting $51,157.41 from $55,250 yields $4,092.59.   The maximum amount that can be changed for points and fees and avoid HOEPA coverage would be $4,092.58.

(1) Plaintiffs adequately pled equitable tolling with respect to the violations which occurred at the loan origination; and (2) the rescission-related claim is based on a separate TILA violation which did not accrue until after the Plaintiffs' cancellation notice and well within one year prior to filing the Complaint.

      **A.**      **Rescission Claim and the Statute of Limitations**

TILA's three-day right to cancel is set out in 15 U.S.C. §1635(a):

> Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, *the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission* forms required *under this section together with a statement containing the material disclosures required under this subchapter, whichever is later,* by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall *clearly and conspicuously* disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. *The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.*

15 U.S.C. § 1635(a)(emphasis added).  Thus, the three-day cancellation period begins upon the <u>later</u> of the following events: (1) the "consummation of the transaction;" (2) the "delivery of the information and rescission forms" required by that section; or (3) delivery of accurate "material disclosures" required by TILA. 15 U.S.C. § 1635(a).  *Semar v. Platte Valley Fed. Sav. & Loan Ass'n.*, 791 F.2d 699, 702 (9th Cir. 1986); *Williamson v. Lafferty*, 698 F.2d 767, 769 (5th Cir. 1983); *Reynolds v. D & N Bank*, 792 F. Supp. 1035, 1038 (E.D. Mich. 1992).  The temporal outer limit of the recision right is three years. 15 U.S.C. § 1635(f); *see also Beach v. Ocwen Federal Bank* 523 U.S. 410 (1998).

A creditor's obligation upon receipt of a borrower's recision notice is set out in 15 U.S.C. § 1635(b): "When a borrower exercises his right to rescission under TILA, the creditor must take action within 20 days after receipt of notice of rescission to return the borrower's money and to terminate its security interest." See 15 U.S.C. § 1635(b). Failure to comply with this requirement constitutes a separate violation of TILA under § 1640; therefore, the one-year limitations period for rescission claims runs from 20 days after plaintiffs gave notice of rescission. See *Belini v. Washington Mut. Bank, FA,* 412 F.3d 17, 26 (1st Cir. 2005). *Malfa v. Household Bank, F.S.B.*, 825 F.Supp. 1018, 1020 (S.D. Fl. 1993).

The Howards allege that they never received accurate and proper disclosures and, therefore, had a continuing right to rescind (up to three years). (Complaint, ¶ 68). The loan was closed on January 19, 2007. Plaintiffs notified Bayrock on their election to cancel the loan by certified mail on November 18, 2009. (Complaint, ¶ 69).[4] The notice was received November 20, 2009. The Complaint was filed on December 18, 2009. The rescission claim is not time-barred.

**B.    BOA's Assignee Liability**

Plaintiffs unambiguously allege that BOA is liable, as assignee of the loan, for damages and other remedies, including rescission. (Complaint ¶ 73). Without much explanation, BOA claims that it is not liable as an assignee and because the violations are not "apparent on their face." This is the wrong standard of assignee liability. The "apparent on its face" standard is set out in § 1641(a) and applies "[e]xcept as otherwise specifically provided. ..." 15 U.S.C. § 1641(a). TILA specifically provides two other standards of assignee liability: absolute liability of assignees for rescission claims

---

[4]The Complaint alleges that the notice was sent but inadvertently omits the date it was received. This will be corrected in the forthcoming amended complaint.

(§ 1641(c)) and a due diligence standard for assignee liability for HOEPA violations (§ 1641(d)(1).

Taking Plaintiffs' allegations that this loan is governed by HOEPA as true, the standard for assignee

liability set out in Section 1641(d)(1) applies - not the "apparent on its face" standard set out in

Section 1641(a).  With respect to the rescission claim, BOA is automatically liable as assignee under

Section 1641(c).  Both of these provisions are discussed below.

1.     **Assignee Liability for Rescission Claims**

Section 1641(c) states as follows:  Any consumer who has the right to rescind a transaction

under section 1635 of this title may rescind the transaction as against any assignee of the obligation.

15 U.S.C. § 1641(c).  Thus, if the Howards have the right to rescind and properly exercised that

right, as they allege, then BOA, as assignee, is liable for any claim arising therefrom.

2.     **Assignee Liability for HOEPA Violations**

For any loan governed by HOEPA loan, the standard for assignee liability is set out in

Section § 1641(d)(1) which provides as follows:

> Any person who purchases or is otherwise assigned a mortgage referred to in section
> 1602(aa) of this title *shall be subject to all claims and defenses with respect to that
> mortgage that the consumer could assert against the creditor of the mortgage*, unless
> the purchaser or assignee demonstrates, by a preponderance of the evidence, that a
> reasonable person exercising ordinary due diligence, could not determine, based on
> the documentation required by this subchapter, the itemization of the amount
> financed, and other disclosure of disbursements that the mortgage was a mortgage
> referred to in section 1602(aa) of this title. The preceding sentence does not affect
> rights of a consumer under subsection (a), (b), or (c) of this section or any other
> provision of this subchapter.

15 U.S.C. § 1641(d)(1) (emphasis added).  The application of this provision is explained as follows:

> For HOEPA loans, liability is not limited to violations *apparent on the face of loan
> documents, ...* but rather liability exists unless the assignee proves that a *reasonable
> person exercising ordinary due diligence could not determine ... the itemization of the
> amount financed, and other disclosure of disbursements* that the loan was a HOEPA

loan, as detailed in section 1641(d)(1). . .. Courts have interpreted section 1641(d)(1)'s due diligence requirement as placing the burden on an assignee to prove, by a preponderance of the evidence, that the assignee *could not reasonably determine, could not determine,* or *did not know* that the loan was a HOEPA loan."

*Cooper v. First Gov't Mortgage & Investors Corp.*, 238 F.Supp.2d 50, 55 (D.D.C.2002); *see also*

*Short v. Wells Fargo Bank Minnesota, N.A.*, 401 F.Supp.2d 549 (S.D.W.Va 2005); *Cazares v.*

*Pacific Shore Funding*, 2006 WL 149106 (C.D.Cal.,2006). Applying the plain language of Section

1641(d)(1), the burden is on BOA to prove that it is not liable as an assignee under the standard set

out in that section. Assignee liability under HOEPA is not an element of proof required by the

Plaintiffs. The burden is on BOA and it must assert that claim as an affirmative defense.

Accordingly, it is not an issue appropriately addressed through Rule 12.

Judge Steele addressed this very point in *Williams v. Saxon Mortg.*, 2007 WL 3124470

(S.D.Ala. October 25, 2007):

> To the extent that Saxon or Deutsche might have intended to raise as a separate ground that it is entitled to judgment on the pleadings as to the HOEPA claims pursuant to 15 U.S.C. § 1641(d)(1), the Court likewise rejects that contention. Movants' position is that the mere failure to provide assignee notices (as alleged in Paragraph 44 of the Third Amended Complaint) is sufficient to satisfy their burden because in the absence of those notices, "there was no way for an assignee to know that the loan was subject to HOEPA." (Movants' Brief, at 5.) This argument is incorrect as a matter of law, inasmuch as there are myriad ways an assignee could reasonably determine in ordinary diligence from documents provided that a loan was a HOEPA loan, even in the absence of assignee notices. At this early stage, the undersigned cannot discount the possibility that movants could reasonably have determined upon the exercise of due diligence that plaintiffs' loan was a HOEPA loan, much less hold that movants have satisfied their burden of proving otherwise.

*Id.*, n. 8. The Complaint sufficiently pleads claims for liability against BOA, as assignee, and BOA's

argument to the contrary should be rejected.

**C.   Equitable Tolling**

13

The doctrine of equitable tolling has a long history in American jurisprudence. "[W]here the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief provided suit is brought within proper time after the discovery of the fraud." *Bailey v. Glover*, 88 U.S. 342, 347-348 (U.S. 1875) "'Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations." *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); accord *Young v. United States*, 535 U.S. 43, 49, 122 S. Ct. 1036, 152 L. Ed. 2d 79 (2002). In *Ellis*, the Court held that the statute of limitations is subject to equitable tolling, given TILA's remedial purposes. *Boudin v. Residential Essentials, LLC*, 2007 U.S. Dist. LEXIS 50331 (S.D. Ala. July 10, 2007). Plaintiffs acknowledge that equitable tolling does not spring from every non-disclosure. "[A] TILA plaintiff who attempts to avail himself of equitable tolling must establish some fraudulent conduct or concealment other than the mere non-disclosure in the loan documents that constitutes the TILA violation itself." *Williams v. Saxon Mortg. Servs.*, 2007 WL 2828752 (S.D. Ala. Sept. 27, 2007). *Pettola v. Nissan Motor Acceptance Corp.*, 44 F.Supp.2d 442, 450 (D.Conn.1999); *see also Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 580 (M.D.Fla.2006). However, it does not follow that a plaintiff must prove fraud unrelated to the non-disclosure. The fact that some of these allegations may correspond to the disclosure violations does not render equitable tolling inapplicable where those alleged facts constitute an active scheme to deceive borrower. This is what is plead here.

Here Plaintiffs have plead several allegations of fraudulent conduct other than "mere non-disclosure in the loan documents." Paragraph 63 of the Complaint alleges that Defendants actively misled the Plaintiffs through a list of specific acts and omissions. These allegations sufficiently

14

plead facts necessary to establish equitable tolling.

The *Boudin* court stated:

The key is the HUD-1, which is made a part of the amended Complaint, and which the plaintiff alleges was "calculated to deceive" him concerning the distribution of the $ 120 mortgage recording fee. (Doc. 22, P 20). On eleven different lines, the title charge is listed, followed by the words, "to ATM Corporation of America." Thus, for example, line 1113 reads, "Courier Fee to ATM Corporation of America - 30.00." Line 1201, in contrast, reads, "Recording Fees: Mortgage $ 120.00," with no mention of ATM. A reasonable construction of the HUD-1 is that ATM designed its selective use of the "to ATM Corporation of America" language to conceal evidence of its alleged improper retention of $ 72 of the mortgage recording fee. The amended Complaint alleges that the plaintiff was not on notice of ATM's wrongdoing, and it asserts that he exercised due diligence in that he reviewed the HUD-1 and other relevant loan documents and actively participated in all aspects of the loan transaction.

As in *Boudin*, the Complaint alleges that Plaintiffs exercised reasonable consumer diligence during their loan transactions and dealings with Bayrock. Plaintiffs also allege that, "[t]he fact that the charges reflected in Lines 1102, 1105, 1106, 1108, 1111, 1112, 1201 and 1202 exceeded the actual costs of the services actually provided was unknown to Plaintiffs. The fact that those charges were marked up, illegal, excessive and otherwise improper, was unknown to, and unknowable by, Plaintiffs because the actual costs for providing or obtaining the services were not available to or discoverable by them and Bayrock actively deceived Plaintiffs about who was providing these services and the fact that they were being defrauded by the use of fraudulent HUD-1 settlement statements and TILA disclosures." Complaint, ¶ 48. Plaintiffs do not allege that Bayrock merely put the wrong numbers in the disclosures which caused the violations. Plaintiffs allege that Bayrock engaged in active behavior (e.g., failing to identify the actual entities receiving fees and commissions and the amount of those fees and commission) which would render it difficult, if not impossible, to discern from the closing documents the true nature of the fees. (Complaint, ¶ 63).

15

The facts here are analogous to the facts which the Veal court found sufficient to sustain a claim of equitable tolling as to the plaintiff and a putative class.

> Here, Plaintiff alleges that Defendant's TracGuard disclosures fail to specify the premium paid for the Etch insurance policy and that Defendant failed to disclose the amount financed in its standard retail installment sales contracts. Plaintiff alleges that Defendant included the cost of Etch Insurance in the amount financed instead of the finance charge, without providing the necessary disclosures pursuant to 15 U .S.C. § 1605(c) and Regulation Z, 226.4(d)(2). It can be reasonably inferred from Plaintiff's allegations that because of the alleged inadequate disclosures, he was not aware of his TILA cause of action within one year of the purchase of his vehicle. Plaintiff has accordingly alleged sufficient facts which may support equitable tolling of the limitations period. At this stage of the proceedings, dismissal of Plaintiff's TILA claim as untimely is inappropriate.

*Veal*, 2006 WL 435693, p. 3.  The facts plead by the Howards are sufficient to establish equitable tolling.

## **CONCLUSION**

For all the reasons stated above, BOA's Motion to Dismiss is due to be denied.

s/Kenneth J. Riemer
Kenneth J. Riemer, Esq.
One of the Attorneys for Plaintiffs
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212
251.433.7172 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY this 21st day of May, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all counsel of record.

s/ Kenneth J. Riemer
_____
KENNETH J. RIEMER
