IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| RANDY AND TRISHA HOWARD, individually and on behalf of a class of similarly situated persons, ) ) ) ) | |
| Plaintiffs, ) | Case No. 09-cv-00820 |
| ) | |
| v. ) | The Honorable William H. Steele |
| ) | |
| BAYROCK MORTGAGE CORPORATION, FIRST AMERICAN CORPORATION, UNITED GENERAL TITLE INSURANCE COMPANY and BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACK SECURITIES I TRUST 2007-HE4 ASSET-BACK CERTIFICATES, SERIES 2007-HE4. ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## BANK OF AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Bank of America, National Association As Successor By Merger To LaSalle Bank National Association, As Trustee For The Registered Holders Of Bear Stearns Asset Back Securities I Trust 2007-HE4 Asset-Back Certificates, Series 2007-HE4 ("Bank of America") hereby submits is Memorandum in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

Plaintiffs Randy and Trisha Howard (the "Howards") entered into a mortgage loan with Bayrock Mortgage Corporation ("Bayrock") in early 2007. Almost two years later, the Howards

{M0045778.1}

brought the instant action against Bank of America, claiming that Bayrock and settlement agent, Lenders' First Choice ("LFC"), violated federal lending laws at closing. The Howards seek to hold Bank of America liable under the Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA") for Bayrock and/or LFC's purported wrongdoing based solely on their allegation that Bank of America is an "assignee" of their loan. However, the Howards' irrelevant, threadbare and conclusory allegations fail to state any claim against Bank of America, and their First Amended Complaint should therefore be dismissed *with prejudice*.

First, the Howards' TILA rescission and damages claims fail because the First Amended Complaint does not allege even the most basic fact required to state a claim under TILA – that an improper disclosure was made on a TILA disclosure form. Second, the purported TILA claims also fail because the Howards do not allege any facts showing that TILA violations were apparent on the face of any TILA disclosure, as required for assignee liability under TILA. Third, the Howards' HOEPA claims for damages and rescission fail because the Howards do not – and cannot – allege sufficient facts to show that HOEPA applies to their loan. The Howards fail to allege that HOEPA applies to their loan for three reasons: (1) they do not allege facts to support their improper legal conclusion that the "total loan amount" is $50,696.95; (2) their calculation of "total points and fees" is incorrect as a matter of law; and (3) they do not, and cannot, allege their loan is "second or subordinate." Finally, both the Howards' TILA and HOEPA damages claims are barred by the one-year statute of limitations.

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The Howards allege that on January 19, 2007, they entered into a "consumer transaction" with Bayrock in which "Bayrock extended consumer credit" secured by their home located at 3057 Kendale Drive, Mobile, Alabama 36606 (the "Mortgage Loan"). (Am. Compl. Doc. 1,

paras. 8-9.) The Howards allege that the Mortgage Loan was later "assigned" to Bank of America. (*Id.* para. 8.) The Howards allege LFC acted as the settlement agent at the Mortgage Loan closing. (*Id.* paras. 12-13.) They allege that Bayrock, through LFC, charged "unreasonable" fees in connection with the closing of the Mortgage Loan in violation of TILA and HOEPA, 15 U.S.C. § 1601, *et seq*. (*Id.* paras. 21-46.) The Howards allege Bayrock failed to make "material disclosures" as required by TILA, and refused to rescind their loan after receiving a notice of rescission. (*Id.* paras. 56-62.) Additionally, the Howards allege Bayrock violated HOEPA by failing to: (1) disclose that the loan was a "high cost or HOEPA loan;" (2) make "other disclosures required by HOEPA;" (3) use "mortgage terms that were compliant with HOEPA;" and (4) "furnish the required HOEPA disclosures" three days prior to settlement. (*Id.* paras. 56(d)-(f), 79.) The First Amended Complaint contains no allegations concerning any Truth in Lending Disclosure Statement ("TILS") the Howards may have received in connection with their loan transaction with Bayrock, nor does it allege that any disclosures required by TILA were omitted or improperly stated on a TILS. (*See generally, Id.*) Likewise, the Howards do not allege facts to support their conclusory allegations that the "total loan amount" and the "total points and fees charged" make their loan subject to HOEPA. (*See generally, Id.*)

The Howards allege that Bank of America, as an assignee of Bayrock, is liable for Bayrock's purported TILA and HOEPA violations. (*Id.* 62.) They seek statutory damages, rescission, and attorneys' fees from Bank of America. (*Id.* paras. 63, 81, "Prayer for Relief".)

## ARGUMENT

**I.     LEGAL STANDARD.**

The United States Supreme Court abrogated the dismissal standards set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), which plaintiffs long relied on in opposition to motions to dismiss.

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), the Supreme Court admonished that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and that a complaint containing "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," does not state a cognizable claim for relief.  In *Ashcroft*, the Supreme Court outlined the analytical framework for evaluating the sufficiency of a claim under the standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), holding that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'."  *Ashcroft*, 129 S.Ct. at 1949 (quoting *Twombly*, internal citations omitted).  As set out by the Supreme Court:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* Here, the Howards fail to meet the standards required by the Supreme Court because they assert no TILA or HOEPA claim that is plausible on its face based on the factual allegations pled.

## II.     THE HOWARDS FAIL TO STATE A CLAIM FOR VIOLATION OF TILA.

### A.     The First Amended Complaint Fails To Meet Federal Pleading Standards.

The Howards' TILA damages and rescission claims should be dismissed because they fail to allege any disclosure violations subject to TILA.  All the alleged disclosure violations were purportedly made on a HUD-1 Settlement Statement, a form which is not covered by TILA.

The Howards make the conclusory allegation they are entitled to damages and rescission under TILA because Bayrock did not "properly and accurately disclose" the "amount financed," the "finance charge," and the "annual percentage rate." (Am. Compl. para. 56(a)-(c).) However, the only document the Howards allege failed to contain accurate disclosures is their HUD-1 Settlement Statement (which they do not attach to the First Amended Complaint), and this form is not governed by TILA. *Martin v. National City Mortg. Co.*, 08-cv-1026, 2010 WL 671253, at *2 (E.D. Cal. 2010) (noting distinction between a HUD-1 and a TILS and holding that TILA only applies to disclosures in a TILS.) Instead, TILA requires the lender to make required disclosures on a separate document, the TILS. *Curtis v. Secor Bank*, 896 F.Supp. 1115, 1117 (M.D. Ala. 1995) ("the amount financed, the finance charge, [and] annual percentage" are to be disclosed on the TILS under TILA.) The Howards do not reference or attach a TILS to their First Amended Complaint, nor do they allege that (or how) the "amount financed," "finance charge," and/or "annual percentage rate" were improperly disclosed in this document.

Therefore, the Howards fail to allege any TILA violation against Bank of America, and their TILA claims for damages and rescission should be dismissed.

    **B.**    **Bank Of America Is Not Liable For Plaintiffs' Purported TILA Damages Claims Because The Alleged TILA Violations Are Not Apparent On The Face Of The TILA Disclosures.**

The Howards' TILA damages claim against Bank of America also fails because assignees – as Bank of America is alleged to be – are only liable for TILA violations apparent on the face of the TILA disclosures, 15 U.S.C. § 1641(a), and the Howards fail to allege any such apparent violations. TILA states "a violation apparent on the face of the disclosure statement includes, but is not limited to: (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned; or (2) a disclosure which does

not use the terms required to be used by this subchapter." *In re Jones*, No. 06-81987, 2007 WL 1725593, at *12 (N.D. Ala. Bankr. Jun. 13, 2007).  Further, "for an assignee of a loan to be held liable for disclosure violations, the alleged violation must be discernable solely from an examination of the face of the disclosure statement….Where the fact of a TILA violation depends on extrinsic knowledge, *for instance charges made but not shown on the disclosure statement*, the assignee will not be liable under the TILA."  *Id.*  (emphasis added).

While the Howards' allegations are difficult to decipher, it is clear that the alleged TILA violations (albeit on the HUD-1) spring from Bayrock's and/or LFC's purported overcharging and under-disclosing of certain closing fees.  (Am. Compl. paras. 21-48.)  To determine whether these charges were improper, the Court would have to look beyond the face of the TILS to determine: (1) whether closing fees were actually paid to third parties by reviewing invoices or fee schedules; (2) what the reasonable fees would be by looking at the market rate for each allegedly "unreasonable" fee; and (3) whether so-called "unreasonable" fees were included in the calculations of the amount financed, finance charge, and annual percentage rate as disclosed on the TILS.  These steps would be necessary for the very reason that these types of TILA violations are not apparent on the face of the TILS.  *See, Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703 (1998) (where the court must resort to evidence or documents extraneous to the disclosure statement, assignee claims under TILA are precluded).

Therefore, because the alleged TILA violations are not alleged to be (and could not be) apparent on the face of the disclosures, the Howards' claims against Bank of America should be dismissed with prejudice.

### III. THE HOWARDS FAIL TO STATE A CLAIM FOR VIOLATION OF HOEPA.

The Howards' HOEPA claims for rescission and damages fail because they do not allege facts showing that HOEPA even applies to their loan.  *Lynch v. RKS Mortg. Inc.*, 588 F.Supp.2d

1254, 1260 (E.D. Cal. 2008). The Howards incorrectly and improperly conclude that their loan is a "high cost loan within the meaning of HOEPA, 15 U.S.C. § 1602(aa), because the total points and fees charge [sic] in connection with it exceed 8% of the total loan amount."[1] (Am. Compl. para. 77.) The Howards fail to allege that HOEPA applies to their loan for three reasons: (1) they do not allege facts to support their improper legal conclusion that the "total loan amount" is $50,696.95; (2) their calculation of "total points and fees" is incorrect as a matter of law; and (3) they do not, and cannot, allege their loan is "second or subordinate."

> **A.   The Howards Do Not Allege Facts To Support Their Conclusion That "Total Loan Amount" Is $50,969.95; Therefore They Fail To Plead HOEPA Applies To Their Loan.**

To state a claim under HOEPA, the Howards must allege the "total points and fees" exceed 8% of the "total loan amount." 15 U.S.C. § 1602(aa)(1)(B)(I). *Lynch v. RKS Mortg. Inc.*, 588 F.Supp.2d 1254, 1260 (E.D. Cal. 2008) (dismissing complaint that "does not allege any particular facts showing that the percentage threshold for HOEPA protection was actually crossed"). The Howards improperly conclude, without any factual support, that the "total loan amount" under HOEPA for their loan is $50,696.95. (Am. Compl. para. 43.) The "total loan amount" is a term of art which must be pled – with supporting facts – to state a claim under HOEPA. The Official Staff Commentary to Regulation Z explains that "the total loan amount is

---

[1] The Howards also allege their "loan was subject to TILA and RESPA and also qualified as a 'high-cost' or HOEPA loan as specified under the qualification 'triggers'…[under HOEPA]…by virtue of having met the fee and cost trigger or the annual percentage rate trigger or both." (Am. Compl. para. 38.) The Howards have not even alleged what the annual percentage rate for the loan is, or any other facts to support the conclusion that their loan's annual percentage rate triggers the application of HOEPA. Furthermore, beyond simply stating the conclusion that RESPA applies to their loan, the Howards do not purport to state a claim for violation of RESPA.

calculated by taking the amount financed, as determined according to 226.18(b),[2] and deducting any cost listed in 226.32(b)(1)(iii) and 226.32(b)(1)(iv) that is both included as "points and fees" under 226.32(b)(1) and financed by the creditor."  12 C.F.R. Pt. 226, Supp. I at 226.32(b)(1)(iv).  The Howards do not allege the amount financed at all in the First Amended Complaint, and, as discussed below, incorrectly assert the total "points and fees" equal $4,553.05.  (Am. Compl. para. 42.)  Because the Howards conclude, without factual support, that the total loan amount is $50,696.95, they fail to allege HOEPA applies to their loan and their HOEPA claims should be dismissed.

      **B.**      **The Howards' HOEPA Claim Should Be Dismissed Because Their Calculation Of Total "Points and Fees" Is Incorrect As A Matter Of Law.**

The Howards' HOEPA claims should also be dismissed because their calculation of "points and fees" is incorrect as a matter of law, and therefore their conclusion that the total "points and fees" are in excess of 8% of the "total loan amount" is also incorrect.  Paragraph 42 of the First Amended Complaint lists all of the items the Howards allege are included in their calculation of points and fees for their loan.  However, paragraph 42 includes various charges which must be excluded from the calculation of points and fees.[3]

---

    [2]  The "amount financed" is also a term of art defined by HOEPA.  The amount financed is calculated by:

> (1) Determining the principal loan amount or the cash price (subtracting any downpayment);
> (2) Adding any other amounts that are financed by the creditor and are not part of the finance charge; and
> (3) Subtracting any prepaid finance charge.

12 C.F.R. § 226.18(b)(1)-(3).

    [3]  Under HOEPA, "total points and fees" include:

> (A) all items included in the finance charge, except interest or the time-price differential;
> (B) all compensation paid to mortgage brokers;

Fees – other than those for title insurance – paid to the settlement agent LFC are not finance charges to be included in calculating "pints and fees" because the Howards have not, and cannot, plead that the creditor Bayrock required them.  Regulation Z, 12 C.F.R. § 226.4(a)(2), provides:

> Fees charged by a third party that conducts the loan closing (such as a settlement agent, attorney, or escrow or title company) are finance charges only if the creditor
>     (i) Requires the particular services for which the consumer is charged;
>     (ii) Requires the imposition of the charge; or
>     (iii) Retains a portion of the third-party charge, to the extent of the portion retained.

The Howards do not allege that Bayrock required LFC to provide any services, required LFC to impose any charges, or retained any portion of charges imposed by LFC.  Instead, the Howards merely allege: "Bayrock prepares and provides to the settlement agent 'Closing Instructions' which set out the amounts to be charged and included in the HUD-1 Settlement Statement." (Am. Compl. para. 17.)  However, the actual Closing Instructions for the Howards' loan only

---

> (C) each of the charges listed in section 1605(e) of this title (except an escrow for future payment of taxes), unless-
>     (i) the charge is reasonable;
>     (ii) the creditor receives no direct or indirect compensation; and
>     (iii) the charge is paid to a third party unaffiliated with the creditor; and
> (D) such other charges as the Board determines to be appropriate.

15 U.S.C. § 1602(aa)(4). In turn, § 1605(e) lists:

> (1) Fees or premiums for title examination, title insurance, or similar purposes.
> (2) Fees for preparation of loan-related documents.
> (3) Escrows for future payments of taxes and insurance.
> (4) Fees for notarizing deeds and other documents.
> (5) Appraisal fees, including fees related to any pest infestation or flood hazard inspections conducted prior to closing.
> (6) Credit reports.

15 U.S.C. § 1605(e).

require title insurance, and do not require any of the other charges paid to LFC and listed on the HUD-1 Settlement Statement.[4]

The Howards erroneously conclude the following items charged by LFC are finance charges and improperly include them in the total "points and fees" for their loan:

| *HUD-1[5] Charge* | *HUD-1 Amount* | *Charged By* | ***Amount Include In Howards' "Points and Fees" Calculation*** | *HUD-1 Line No.* |
|---|---|---|---|---|
| Settlement or closing fee (Unalleged) | $300 | LFC | $300 (Am. Compl. para 42.) | 1101 |
| Abstract or title search (Am. Compl. paras. 32, 37) | $175 | LFC | $75 (Am. Compl. para. 42) | 1102 |
| Signing fee (Am. Compl. para. 35) | $150 | LFC | $150 (Am. Compl. para. 42) | 1106 |
| Wire fee (Am. Compl. para. 33) | $25 | LFC | $25 (Am. Compl. para. 42) | 1111 |
| Delivery fee (Am. Compl. para. 34) | $30 | LFC | $30 (Am. Compl. para. 42) | 1112 |

But because the Howards do not, and cannot, plead these charges or services were required by Bayrock, or that Bayrock took any portion of them, they are not finance charges and should not be included in the Howards' calculation of "points and fees." Therefore, a total of $580 (*i.e.*, $300 + $75 + $150 + $25 + $30 = $580) should be removed from the total "points and fees" alleged in paragraph 42 of the First Amended Complaint.

---

[4] A copy of the Howards' Closing Instructions is attached hereto as <u>Exhibit A</u>. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Ishler v. C.I.R.*, 442 F.Supp.2d 1189, 1198, n.20 (N.D. Ala. 2006).

[5] A copy of the HUD-1 Settlement Statement for the Howards' loan is attached hereto as <u>Exhibit B</u>. *See, Ishler,* 442 F.Supp.2d at 1198, n.20.

When these fees are deducted from the Howards' calculation of the total "points and fees," the total "points and fees" is reduced to $3,973.05 (*i.e.*, $4,553.05 - $580 = $3,973.05). Accepting the Howards' unsupported conclusory allegation that "the total loan amount" is $50,696.95, the total "points and fees" – excluding those fees charged by LFC – do not equal 8% of the total loan amount (*i.e.,* $3,973.05 / $50,696.95 $\times$ 100 = 7.8%). However, according to Regulation Z, the total "points and fees" must be deducted from the "total loan amount," so $580 must be deducted from the "total loan amount" as well. 12 C.F.R. Pt. 226, Supp. I at 226.32(b)(1)(iv). When the $580 in fees charged by LFC is deducted from the total "points and fees" and "total loan amount" alleged in the First Amended Complaint, the percentage is still under the 8% required by HOEPA (*i.e.,* $3,973.05 / $50,116.95 $\times$ 100 = 7.9%). Because the Howards have not, and cannot, allege the fees listed above charged by LFC should be included in the finance charge, their calculation is incorrect and HOEPA does not apply to their loan. Therefore, the Howards' HOEPA claims should be dismissed.

A number of the additional purported "points and fees" included in the Howards' calculation are likewise based on incorrect and/or conclusory allegations. Specifically:

- Fees for abstract of title are specifically excluded from the finance charge. 12. C.F.R. 226.4(c)(7)(i). The Howards conclude, without support, the abstract or title search fee of $175 "was neither *bona fide* nor reasonable…[t]he actual cost of these services did not exceed $100.00." (Am. Compl. para. 32.) Such unsupported legal conclusions do not comply with Rule 8(a), and the $75 "marked up" portion of the abstract fee should not be included in the Howards' calculation of total "points and fees."

- Document preparation fees are specifically excluded from the finance charge. 12. C.F.R. 226.4(c)(7)(iii). The Howards include a document preparation fee of $65 in their calculation of the total "points and fees," concluding, without factual support, and "on information and belief," that "this charge does not relate to any separate service, is completely unearned, [and] was included in the Settlement Fee reflected in Line 1101." (Am. Compl. para. 36.) Again, such a conclusory allegation does not meet the pleading standards of Rule 8(a). Furthermore, the document preparation fee listed on Line 1101 of the HUD-1 was paid to North American Deed Co. and therefore could not have been included in the "Settlement Fee reflected in Line 1101,"

- which was paid to LFC. Therefore, the $65 document preparation fee should be deducted from the Howards' calculation of total "points and fees."

- The Howards allege they "were charged $157.05 above what was actually paid to the probate court for recording fees." (Am. Compl. para. 29.) However, in their calculation of total "points and fees" they allege the marked up portion of the recording fee was $175.05. (Am. Compl. para. 42.) By their own allegations, the Howards overstate the total "points and fees" by $18.

These additional errors in calculating the "points and fees" further demonstrate the Howards cannot allege HOEPA applies to their loan.

Because the Howards' conclusory and incorrect allegations fail to plead that HOEPA applies to their loan, their claims for rescission and damages against Bank of America under HOEPA should be dismissed.

### C. The Howards' Loan Is Not Second Or Subordinate; Therefore HOEPA Does Not Apply.

Because the Howards do not and cannot allege their loan is "second or subordinate," their HOEPA claims must fail. For HOEPA to apply, a mortgage loan must be:

> 1) a consumer credit transaction,
> 2) with a creditor,
> 3) that is secured by the consumer's principal dwelling,
> ***4) and is a second or subordinate residential mortgage, not a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open credit plan,***
> 5) and that satisfies either of the following two tests:
>> (a) the annual percentage rate (APR) of interest for the loan transaction exceeds certain levels; or (b) the total "points and fees" payable by the borrower at or before closing will exceed the greater of (i) 8% of the total loan amount; or (ii) $400.00.

*Cooper v. First Government Mortg. & Investors Corp.,* 238 F.Supp.2d 50, 54 (D.D.C. 2002) (emphasis added), *citing, Lopez v. Delta Funding Corp.*, No. CV 98-7204, 1998 WL 1537755, at *5 (E.D.N.Y. Dec. 23, 1998). Here, the Howards do not allege their loan is second or subordinate because it refinanced the first mortgage on their property. The Closing Instructions for the loan at issue in this case state "[t]his loan must record in first lien position" and "closing

agent to ensure Bayrock in 1st lien position with no other liens or encumbrances." (*See*, Exhibit A.)  Courts have held that where a loan refinances a first mortgage, and thereby takes first lien position, HOEPA does not apply.  For example, in *Reese v. JPMorgan Chase & Co.*, the United States District Court for the Southern District of Florida held that a mortgage used to refinance the first mortgage on the subject property was not "second or subordinate" and therefore was not HOEPA loan.  686 F.Supp.2d 1291, 1299 (S.D. Fla. 2009); s*ee also, James v. New Century Mortgage Corp.*, No. 04-194, 2006 WL 2989242, at *5 (E.D. La. Oct. 17, 2006) (where loan refinanced first lien, it was not "second or subordinate" such that HOEPA applied).

Because the Howards do not, and cannot, allege their mortgage loan is "second or subordinate," their claims for rescission and damages against Bank of America under HOEPA should be dismissed.

### III. THE HOWARDS' TILA AND HOEPA DAMAGES CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

The Howards' TILA and HOEPA claims for damages against Bank of America are time-barred because they did not sue Bank of America within TILA's one-year limitations period.[6]  15 U.S.C. § 1640(e) (TILA damages claims must be brought "within one year from the date of the occurrence of the violation"); *see also, Williams v. Saxon Mortg. Services, Inc.*, No. 06-799, 2007 WL 2828752, at *3 (S.D. Ala. Sep. 27, 2007) (noting HOEPA and TILA's one year statute of limitations for damages claims).  This period runs from the date of consummation of the loan transaction.  *Williams*, 2007 WL 2828752, at *3.  The Howards consummated their loan transaction on January 19, 2007, but did not file their Complaint until December 18, 2009 – almost three years later.  Therefore, the Howards are barred under § 1640(e) from asserting a

---

[6] Confusingly, Count I is entitled "Rescission" but prays for relief in the form of statutory damages under TILA. (Am. Compl. para. 63(d), and "Prayer for Relief" para. E.) Additionally, the "wherefore" clause at the end of Count II requests damages under HOEPA.

claim for damages against Bank of America. *See, e.g.*, *Watkins v. Farmers and Merchants Bank*, No. 08-259, 2010 WL 1257719, at *6 (M.D. Ga. Mar. 26, 2010) (dismissing TILA disclosure claims filed more than one year after date of loan transaction).

While they attempt to plead that some sort of equitable tolling or estoppel theory should apply generally to their claims, the Howards' tolling allegations fail under *Twombly* for several reasons. (Am. Compl. paras. 49-53.) Equitable tolling and/or estoppel "is an extraordinary remedy which should be extended only sparingly," *Hedges v. U.S.*, 404 F.3d 744, 751 (3d Cir. 2005), and only applies if, "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claims." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). *See also Bloom v. Martin*, 865 F. Supp. 1377, 1387 (N.D. Cal. 1994) ("[e]quitable tolling generally applies in extraordinary circumstances beyond plaintiffs' control which made it impossible to file their claims on time.") To assert equitable tolling, a plaintiff must allege facts showing that "(1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) which prevented the plaintiff from recognizing the validity of his claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to his lack of reasonable due diligence in attempting to uncover the relevant facts." *In re Cmty. Bank of N. Va.*, 467 F. Supp. 2d 466, 478 (W.D. Pa. 2006) (citation omitted).

First, the Howards do not, and cannot, allege that Bank of America was in any way involved in actively misleading the Howards about the fees charged at closing and disclosed (or not) on their HUD-1 Settlement Statement. Bank of America was not, as the Howards acknowledge, a party to the closing transaction. (*Id.* para. 8.) The Howards do not allege that Bank of America took any actions after closing to prevent the Howards from discovering the purportedly improper disclosures. (*Id.* paras. 49-53.) Therefore, because Bank of America had

no role in allegedly preventing the Howards from discovering the purported violations, a tolling theory cannot apply to extend the limitations period for their TILA and HOEPA damages claims against Bank of America.

Next, as addressed above, to hold Bank of America liable for TILA damages, as an assignee, the alleged TILA violations must be "apparent on the face of the loan documents." 15 U.S.C.A. § 1641(a). Under TILA, to be "apparent on the face," a violation must be one that "a reasonable person can spot on the face of the disclosure statement or other assigned documents." *Marks v. Ocwen Loan Servicing*, No. C 07-02133 SI, 2008 WL 344210, at *3 (N.D. Cal. Feb. 6, 2008). If the alleged violations were apparent on the face of the documents, the Howards knew or should have known about them as soon as they received the disclosures.[7]

Finally, the Howards have not alleged the date on which they discovered the TILA or HOEPA violations, or any facts related to their alleged "discovery." Without a date on which the Howards specifically knew or should have known of the alleged violations, and facts concerning the circumstances of how they acquired this knowledge, the First Amended Complaint does not allege facts to support tolling under *Twombly*, *Iqbal* and Rule 8(a).

Without plausible factual allegations, courts have consistently rejected the notion that a TILA or HOEPA claim based on allegedly deficient disclosures can be subject to equitable tolling. *See, e.g.*, *Grinke v. Countrywide Home Loans, Inc.,* No. 08-23382, 2009 WL 2588746, at *2 (S.D. Fla. Aug. 24, 2009) (denying TILA tolling "[w]here a plaintiff relies…on the same allegations of fraud which constitute the TILA violation (such as failing to disclose certain finance charges) to prove fraudulent concealment" because "if failure to make TILA disclosures

---

[7] Conversely, if the alleged TILA violations were not "apparent on the face" of the disclosures, then Bank of America is not subject to assignee liability under TILA. 15 U.S.C.A. § 1641(a). The Howards cannot have it both ways.

also tolled the limitations period for pursuing TILA claims, then the statute of limitations would be rendered meaningless because those non-disclosures are the very essence of the TILA violation in the first place"); *Watkins v. Farmers and Merchants Bank*, No. 08-259, 2010 WL 1257719, at *6 (M.D. Ga. Mar. 26, 2010) (same); *Williams v. Saxon Mortg. Services, Inc.*, No. 06-0799, 2007 WL 2828752, at *5 (S.D. Ala. Sep. 27, 2007) (dismissing TILA and HOEPA claims as time-barred where no factual allegations supporting tolling were made); *Issa v. Provident Funding Group, Inc.*, No. 09-12595, 2010 WL 538298, at *3 (E.D. Mich. Feb. 10, 2010) (same); *Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (rejecting tolling argument for TILA claim because "nothing prevented [plaintiff] from comparing the loan contract…initial disclosures, and TILA's statutory and regulatory requirements"); *Ung v. GMAC Mortg.*, No. 09-893, 2009 WL 2902434, at *2 (C.D. Cal. Sep. 4, 2009) (rejecting tolling argument for TILA claim because "Plaintiff's failure to inspect or understand the documents does not toll TILA's statute of limitations").

Because the Howards' TILA and HOEPA damages claims against Bank of America were filed well over a year after their loan was consummated, and no equitable tolling theory applies, their claims for damages under TILA[8] and HOEPA should be dismissed, with prejudice.

---

[8] Because the Howards' underlying TILA claims fail, Bank of America cannot be held liable for TILA damages for failure to rescind, and the Howards' TILA claim based on failure to rescind must be dismissed. *Clay v. Johnson*, 264 F. 3d 744, 751 (7th Cir. 2001) (borrowers not entitled to rescission or statutory damages where lender's disclosures were sufficient under TILA).

## CONCLUSION

For the reasons set forth herein, Bank of America, National Association As Successor By Merger To LaSalle Bank National Association, As Trustee For The Registered Holders Of Bear Stearns Asset Back Securities I Trust 2007-HE4 Asset-Back Certificates, Series 2007-HE4 respectfully requests that this Court dismiss Plaintiffs' First Amended Class Action Complaint with prejudice and grant such other and further relief as this Court deems appropriate.[9]

Date:  August 10, 2010

BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACK SECURITIES I TRUST 2007-HE4 ASSET-BACK CERTIFICATES, SERIES 2007-HE4.

   /s/Sandy G. Robinson
**SANDY G. ROBINSON – ROBIS5756**
Attorney for Defendant
Bank of America

**BURKE, WARREN, MACKAY & SERRITELLA, P.C.**
LeAnn Pedersen Pope, admitted *pro hac vice*
Stephen R. Meinertzhagen, admitted *pro hac vice*
Susan J. Miller Overbey, admitted *pro hac vice*
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
Telephone:  (312) 840-7000
Facsimile:  (312) 840-7900
E-mail:  lpope@burkelaw.com
          smeinertzhagen@burkelaw.com
          soverbey@burkelaw.com

**CABANISS, JOHNSTON, GARDNER, DUMAS & O'NEAL LLP**
Post Office Box 2906
Mobile, Alabama  36652
Telephone:  (251) 415-7308
Facsimile:  (251) 415-7350
Email:  sgr@cabaniss.com

---

[9] While only Counts I and II are addressed in this Motion, Counts III and IV do not purport to state separate causes of action.  Count III merely provides "Class Allegations" (it is axiomatic that Rule of Civil Procedure 23 provides a procedural mechanism, not a cause of action); Count IV is titled "Rescission and Declaratory Judgment" and requests these forms of relief under the TILA and HOEPA claims alleged in Counts I and II.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Earl P. Underwood, Esquire<br>epunderwood@gmail.com | Kenneth J. Riemer, Esquire<br>kjr@alaconsumerlaw.com |
| C. Lee Reeves, Esquire<br>lreeves@sirote.com | Charles Andrew Newman, Esquire<br>cnewman@sonnenschein.com |
| Elizabeth T. Ferrick, Esquire<br>eferrick@sonnenschein.com | T. Julian Motes, Esquire<br>Jmotes@sirote.com |

                                                                 /s/Sandy G. Robinson         
                                                                          Of Counsel